UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TODD ASHKER,<br><br>        Plaintiff,<br><br>    v.<br><br>SCOTT KERNAN; JEFFREY BEARD; GEORGE GIURBINO; SUSAN HUBBARD; KELLY HARRINGTON; J. MCLAUGHLIN; M. RUFF; D. ROTHCHILD; J. ROBERTSON; C.E. DUCART; VARGAS; M. RUSSELL; J. FALLIS; W. BLACK; S. ALFARO; C. GIPSON; R. DIAZ,<br><br>        Defendants | Case No. 18-cv-06350-WHA<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 61 |

## INTRODUCTION

Plaintiff is a California prisoner proceeding pro se. He filed this civil rights action under 42 U.S.C. § 1983 against prison officials for violating his constitutional rights. Claims against numerous defendants located in the Eastern District of California were severed and transferred to the Eastern District. The remaining defendants are or were located at Pelican Bay State Prison ("Pelican Bay") and at the California Department of Corrections and Rehabilitation ("CDCR"). Defendants filed a motion for summary judgment, plaintiff filed an opposition, and defendants filed a reply brief. Both parties also filed numerous exhibits and requests for judicial notice. After consideration of all of the papers and for the reasons explained below, defendants' motion is **GRANTED**.

## STATEMENT

Prison officials housed Plaintiff in the Pelican Bay Security Housing Unit ("SHU") from 1990 to 2016. They initially placed him there because he killed another inmate. In 1992 he

received an indeterminate placement because officials validated him as a member of the "Aryan Brotherhood" gang. In 2009, plaintiff and another inmate filed a civil right lawsuit (*Ashker v. Newsom, et. al.*, No. 09-5796 CW, claiming that the conditions in the SHU and indefinite placement there violated their Eighth Amendment rights. They sought damages, as well as injunctive and declaratory relief. In 2012, after obtaining counsel, they amended the complaint to a class-action seeking injunctive relief, and they dropped their claims for damages. Plaintiff and other inmates engaged in three hunger strikes between 2011 and 2013. Plaintiff was the lead named plaintiff in the class action, and the court approved the final settlement in January 2016; final judgment was entered in May 2016.

Beginning in 2014, the CDCR made changes to their gang-related SHU practices --- first in a pilot program, and later pursuant to the --- that included ceasing indefinite detention of inmates in the SHU based solely on membership or affiliation with a gang. Rather, only inmates who engaged in gang-related behavior, including rules violations, would be detained in the SHU. In addition, SHU placements were no longer indefinite because officials performed periodic reviews of inmates' cases and whether they should be in the SHU. Pursuant to these changes, in September 2014, Defendants Giurbino, Rothchild, McLaughlin, and Hubbard held a hearing, at which Defendant Vargas also participated as a counselor, to review plaintiff's SHU placement. They found that evidence from confidential informant testimony and notes indicated plaintiff's involvement in plans to murder a doctor and two lawyers, and they determined that he should remain in the SHU for another 12 months, albeit with certain additional privileges. Plaintiff contends this evidence was false.

In September and October 2015, Defendant Ducart held a classification hearing, and he recommended removing Plaintiff from the SHU but placing him in "restricted custody" for inmates with safety concerns. Defendants Fallis and Russel were involved in this hearing. Plaintiff submitted a rebuttal to Ducart's recommendation. In January 2016, defendants Harrington, Roberts, and Ruff, held a hearing reviewing plaintiff's housing placement. They found that plaintiff did not in fact have overall safety concerns because the Aryan Brotherhood had not ordered his murder, but rather he only had threats from certain inmates from whom he

could be separated in the general population. Consequently, they determined he did not need to be in restrictive custody. In February 2016, he was released from the SHU and transferred to general population at Kern Valley State Prison ("Kern Valley").

Several months earlier, on August 3, 2015, pursuant to the court-ordered settlement in another class action, *Coleman v. Newsom, et. al.*, No. 2:90-cv-00520 KJM-DB (E.D. Cal.), officials implemented a new system for welfare checks in the SHU "Guard One." The system was intended to reduce suicides in the SHU and required in guards to tap their batons on a button when they checked each inmate. The checks were every 30 minutes throughout the day and night and took approximately 15 minutes to complete. Plaintiff asserts that he suffered sleep deprivation because during the checks, defendant Black and other guards made more noise than necessary, including banging their batons, opening and closing doors, and jangling keys. On December 28, 2015, the checks were reduced to once every hour at night. On one occasion, Black referred plaintiff for a mental health evaluation on one occasion after he yelled and cursed at her for making too much noise.

**ANALYSIS**

I.  STANDARD OF REVIEW

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Ibid.*

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). When the moving party has met this burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact,

the moving party wins. *Ibid*.

II.  ANALYSIS

    1.  Conditions of Confinement in SHU

Plaintiff claims that the conditions in the SHU amounted to cruel and unusual punishment, in violation of the Eighth Amendment. He originally sought damages as well as declarative and injunctive relief, but the requests for declaratory and injunctive relief were dismissed under the doctrine of res judicata because plaintiff sought such relief on this same claim in his prior case, *Ashker v. Newsom*. The records submitted by the parties now make clear that the damages portion of this claim was also raised in his prior case, and it is also barred by res judicata. Plaintiff also claims that the decisions to house him in the SHU in 2014, and to house him elsewhere in 2015 and 2016, violated his right to due process. Those claims are addressed below.

Res judicata applies whenever there is (1) an identity of claims, (2) a final judgment on the merits, and (3) identity or privity between parties. *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001). In *Ashker v. Newsom*, plaintiffs claimed that long-term detention in Pelican Bay's SHU violated the Eighth Amendment due to the harsh conditions of confinement, and that the policies and practices regarding review and continued retention of gang affiliates in Pelican Bay's SHU violated due process. The parties settled, and the court gave final approval in January 2016.

Plaintiff's claim here is the same claim that was brought in *Ashker*. Four criteria are used to determine whether successive lawsuits involve the same claim for purposes of res judicata: (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts. *C.D. Anderson & Co., Inc. v. Lemos*, 832 F.2d 1097, 1100 (9th Cir. 1987). The instant case arises out of the same nucleus of facts as *Ashker v. Newsom*, i.e. the conditions of plaintiff faced in the SHU, both cases assert infringement of the Eighth Amendment, both cases involve the same evidence regarding the SHU conditions, and the negotiated settlement of *Ashker v. Newsom* established interests and rights for both parties

4

concerning housing inmates in the SHU --- including changes to CDCR policy --- that would be disturbed by re-litigating the constitutionality of plaintiff's confinement in the SHU.

*Second*, the court-approved settlement and judgment in *Ashker v. Newsom* was a final judgment on the merits for purposes of res judicata. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746-47 (9th Cir. 2006). *Third*, the parties are the same or in privity. Plaintiff was the lead plaintiff in *Ashker v. Newsom*, and in both cases, the defendants to this claim were either the same or were in privity insofar as they were high-level officials at the CDCR and Pelican Bay, represented by the California Attorney General's Office, and had the same interests in defending the same policies and practices. Thus, all three factors for res judicata are present.

Plaintiff argues the claim in *Ashker v. Newsom* was not the same as here because in that case he sought injunctive and declaratory relief, whereas he seeks money damages here. Plaintiff did in fact also seek money damages in *Ashker*, however. Although he dropped the damages portion of the claim when he amended the complaint to assert a class-action, that does not change the res judicata analysis: res judicata applies to claims which could have been litigated as part of the prior cause of action but were not. *See Clark v. Yosemite Community College Dist.*, 785 F.2d 781, 786 (9th Cir. 1986). Not only could plaintiff have brought his damages claim in his prior case, he did in fact bring it. Dropping the damages claim did not allow him to reserve the claim for a new lawsuit after settlement and final judgment. The Ninth Circuit decision in *Hiser v. Franklin*, 94 F.3d 1287 (9th Cir. 1996), in which the court allowed class members to bring claims for damages after the settlement of a class action, is readily distinguishable. In *Hiser*, the plaintiff was not a class member (or even in prison) when the class-action lawsuit was litigated, his claims accrued two years after the class action settled, and the subject of his claims were not raised or litigated in the class-action. *Id*. at 1291, 1293-94. Here, by contrast, plaintiff was not simply a class member in *Ashker v. Newsom*, he brought the lawsuit and dropped the damages claims before it was even a class-action, became the lead class representative, and the subject of his individual Eighth Amendment damages claim here --- the conditions of his confinement in the SHU --- is the very same as of the claims in the class-action *Hiser* does not apply to this case or prevent res judicata from barring plaintiff's damages claim.

Even if res judicata did not bar plaintiff's claim, defendants are entitled to qualified immunity from it. A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). It was not "clearly established" that the conditions of confinement violated the Eighth Amendment when plaintiff was housed there. For purposes of qualified immunity, the law "must be clearly established by controlling authority or a robust consensus of cases of persuasive authority." *Tuuamalemalo v. Greene*, 946 F.3d 471, 477 (9th Cir. 2019). As of February 2016, when plaintiff was transferred out of the Pelican Bay SHU to general population, there was no authority --- let alone a "robust consensus" --- that the conditions plaintiff faced there violated the Eighth Amendment. Indeed, Pelican Bay's SHU conditions were found *not* to violate the Eighth Amendment *per se* in *Madrid v. Gomez*, 889 F. Supp. 1146, 1228-32, 1261 (N.D. Cal. 1995). In *Madrid*, the court did find the conditions unconstitutional for certain inmates who suffered "very serious or severe injury to their mental health." *Ibid.* There is no evidence that plaintiff suffered from serious mental illness, however.

Even viewing all of the evidence regarding the conditions of plaintiff's confinement in the SHU in a light most favorable to him, his claim for damages on the grounds that those conditions violated his Eighth Amendment rights is barred by the doctrines of res judicata and qualified immunity.

2.   Guard-One Welfare Check System

Plaintiff seeks damages against defendants Beard, Kernan, Ducart, Harrington, and Black on the grounds that they violated his Eighth Amendment rights in implementing the Guard One welfare check system. The Ninth Circuit has held that prison officials are entitled to qualified immunity for implementing Guard One because the system was ordered by the court in *Coleman* as part of the settlement decree, such that a reasonable official would have believed implementing the court-ordered system to be lawful. *Rico v. Ducart*, 980 F.3d 1292, 1295 (9th Cir. 2020). Plaintiff argues that *Rico* does not apply because here he claims that guards intentionally made

6

more noise and were more disruptive of their sleep than necessary. In *Rico*, the plaintiff also claimed that guards made "extra unnecessary noise," including running loudly on the metal stairs and banging on the Guard One buttons too frequently. *See id.* at 1304 (Silver, J., concurring in-part, dissenting in-part). Still, the Court held, "[e]ven if the floor officers created some extra noise in implementing Guard One, they are entitled to qualified immunity" as their actions fell "within the vast zone of conduct that is perhaps regrettable but is at least arguably constitutional." *Id*. at 1303. Under *Rico*, defendants here are entitled to qualified immunity on plaintiff's claim that their implementation of Guard One violated his Eighth Amendment rights.

        3.        Housing Decision in 2014

Plaintiff claims that defendants Giurbino, Hubbard, Rothchild, McLaughlin, and Vargas violated his due process rights and retaliated against him for exercising his First Amendment rights in connection with the decision in September 2014 to keep plaintiff in the SHU for one more year, albeit with certain additional privileges. This decision was based upon evidence that plaintiff was involved in plans with other members of the Aryan Brotherhood to murder a doctor and two lawyers. Plaintiff disputes the validity of this evidence.

        a.        Due Process

There was no violation of his right to due process in connection with this decision. The hardship associated with administrative segregation, such as loss of recreational and rehabilitative programs or confinement to one's cell for a lengthy period of time, is not so severe as to violate the Due Process Clause itself. *Toussaint v. McCarthy,* 801 F.2d 1080, 1091-92 (9th Cir. 1986). It would appear that because indefinite placement in California's secure housing units ("SHU") generally renders inmates ineligible for parole consideration, however, they do have a liberty interest protected by due process in not being placed indefinitely in the SHU. *See Wilkinson v. Austin*, 545 U.S. 209, 223-25 (2005) (indefinite placement in Ohio's "supermax" facility, where inmates are not eligible for parole consideration, triggers a state created liberty interest protected by due process). Whether that extends to plaintiff's 2014 SHU placement for one year need not be decided here, however, because even if he had a liberty interest, he received all of the process he was due. He was only entitled to written notice at least 24 hours before the hearing of the asserted

7

violations or allegations, and a written statement of the evidence relied upon and the reasons for the action taken. *See Wolff v. McDonnell*, 418 U.S. 539, 563 (1974). It is undisputed that he received both of these protections. The housing decision also met the due process evidence requirement that it be supported by "some evidence," i.e. "any evidence in the record that could support the conclusion," *Bruce v. Ylst*, 351 F.3d 1283, 1287-88 (9th Cir. 2003), that bears "some indicia of reliability," *Toussaint v. McCarthy*, 926 F.2d 800, 803 (9th Cir. 1990). There were eight pieces of evidence that plaintiff was involved in plans to kill a doctor and two lawyers. This evidence included confidential informant testimony, which was corroborated by coded and uncoded notes between members of the Aryan Brotherhood discussing the plans and showing that the plans had progressed. Plaintiff's disputing the validity of the evidence and assertion that he was not involved in the plans does not implicate his right to due process because the Constitution demands due process, not error-free decision-making. *See Ricker v. Leapley*, 25 F.3d 1406, 1410 (8th Cir. 1994); *McCrae v. Hankins*, 720 F.2d 863, 868 (5th Cir. 1983). There is no triable issue as to whether there was at least "some evidence" of his involvement in the plans that defendants could rely upon to segregate him from other inmates, including other Aryan Brotherhood members, for security reasons.

Plaintiff also argues that he was entitled to additional procedural protections because the housing decision was a disciplinary decision, not an administrative decision. There is no evidence that the decision was disciplinary insofar as plaintiff was not charged with or found guilty of violating any prison rules, nor did he receive a loss of time credits or other punishment; to the contrary, he was allowed additional privileges after the hearing that he previously did not have.

As there are not triable issues as to whether the 2014 housing decision violated plaintiff's right to due process, defendants are entitled to summary judgment on that claim.

    b. <u>Retaliation</u>

Plaintiff claims that defendants' 2014 housing decision was retaliation for his hunger strike and his prior class-action lawsuit, *Ashker v. Newsom*. "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and

8

that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

There is no evidence that any of the defendants made the housing decision *because of* plaintiff's prior lawsuit, hunger strike, or any protected speech. Retaliation is not established simply by showing adverse activity by a defendant after protected speech; rather, the plaintiff must show a causal nexus between the two. *See Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000). Causation requires showing that the prison official intended to take the adverse action out of a retaliatory motive to silence and punish the inmate, as opposed to for some other reason. *Shepard v. Quillen*, 840 F.3d 686, 689-91 (9th Cir. 2016). Evidence probative of retaliatory motive includes proximity in time between the protected speech and the alleged adverse action, the prison official's expressed opposition to the speech, and the prison official's proffered reason for the adverse action was false or pretextual. *Id.* at 690. Retaliatory motive may also be shown by inconsistency with previous actions, as well as direct evidence. *Bruce v. Ylst*, 351 F.3d 1283, 1288-89 (9th Cir. 2003). Mere speculation that defendants acted out of retaliation is not sufficient. *Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014) (citing cases).

The defendants who made the decision in 2014 to keep plaintiff in the SHU submit sworn statements that they based their decision on the evidence presented at the hearing and the applicable prison regulations. The housing decision was not close in time to when plaintiff filed his prior lawsuit (in 2009) or began his hunger strikes (2011). Plaintiff cites statements by prison officials who were hostile to the lawsuit and hunger strikes, but those statements are not simply imputed to the defendants who participated in the 2014 housing decision. There is also no evidence that these defendants made different housing decisions for other inmates in similar situations, nor is there any direct evidence of retaliation.

Plaintiff argues that the evidence of his involvement in the plans to kill the doctor and lawyers was false and a pretext for a retaliatory motive. But even if the evidence they relied upon was false, this would not be sufficient to establish an unconstitutionally retaliatory motive. There is no evidence that defendants knew that the information was false, nor is there any evidence that

9

defendants were motivated by plaintiff's protected speech. Absent evidence connecting plaintiff's protected speech to defendants or their 2014 housing decision, there is no triable factual issue as to whether defendants violated his First Amendment rights by retaliating against him because of his exercise of those rights. Consequently, defendants are entitled to summary judgment on plaintiff's claim retaliation claim relating to the 2014 housing decision.[1]

      c.  Motion for Reconsideration

Plaintiff has filed "objections" in which he seeks reconsideration of the denial of his motion to compel which he sought from defendants the evidence that they relied upon to make the 2014 housing decision. Defendants produced to plaintiff:

> 1) the [Departmental Review Board's ("DRB")] ten-page written explanation of its decision; 2) declarations from DRB members explaining their decision; and 3) detailed summaries of the highly confidential information the DRB relied on, which consisted of physical notes recovered by prison staff and interviews with inmate-informants.

(ECF No. 87 at 4.) They did not produce the evidence itself on the grounds that its dissemination posed a grave risk to the safety of the confidential informants and other inmates from retribution for their cooperation with prison officials. Plaintiff's motion to compel was denied because defendants adequately showed that this safety risk outweighed the necessity of producing the evidence itself in addition to the summaries and other documents described above.

To obtain reconsideration, plaintiff must show: (1) that at the time of the motion for leave, a material difference in fact or law exists from that which was presented to the court before entry of the interlocutory order for which the reconsideration is sought, and that in the exercise of reasonable diligence the party applying for reconsideration did not know such fact or law at the time of the interlocutory order; or (2) the emergence of new material facts or a change of law occurring after the time of such order; or (3) a manifest failure by the court to consider material facts which were presented to the court before such interlocutory order. *See* Civil L.R. 7-9(b).

Plaintiff argues incorrectly that denying the motion to compel involved two manifest

---

[1] Because summary judgment is warranted on the merits, defendants' alternate argument on statute of limitations grounds need not be addressed.

failures to consider material facts. *First*, plaintiff disputes revealing the identity of the confidential informants would endanger their lives at the hands of members of "Security Threat Groups" like the Aryan Brotherhood. Plaintiff argues that this is not the case because he alleges that already knows the identity of two informants. It is not clear that he does in fact know their names already. Even if he does, or thinks he does, the evidence would provide confirmation of their identities, incontrovertible proof of their assistance to prison officials, and the opportunity to deduce the identities of additional people who assisted in providing such information to prison officials. This information would not only pass to plaintiff, but it could not be guaranteed that it would not also pass to other Aryan Brotherhood members. Such circumstances present a serious risk to the safety of the informants and potentially other inmates. There was no manifest error in finding a very significant danger from the disclosure of the evidence to plaintiff.

*Second*, plaintiff argues that the court erred in finding that the summaries of the evidence that were provided to plaintiff were both detailed and accurate. The record plainly shows that the summaries go into painstaking detail about the evidence, and this is not reasonably in dispute. As for their accuracy, plaintiff's argument is that there were inaccuracies in summaries in his prior class-action. The inaccuracies in the numerous summaries in that case does not mean that the summaries here were also inaccurate, of course; the summaries here prepared by different prison officials regarding different evidence for a different hearing conducted by different officials. Plaintiff's speculative assertion of inaccuracy in this case is outweighed by the significant safety risks to inmate-informants.

Plaintiff asserts that he needs the evidence is to prove that defendants' decision to keep him in the SHU in 2014 was incorrect and therefore retaliatory. As explained above, showing that the defendants' housing decision was *incorrect* is not sufficient, without more, to prove it was *retaliation for protected speech*. The decision could have been mistaken or, even if intentional, then motivated by considerations or interests wholly unrelated to plaintiff's protected speech. To show a motive that is unconstitutionally retaliatory, plaintiff must show evidence connecting the defendants who made the housing decision or the decision itself *to plaintiff's protected speech*, i.e. his prior lawsuit and engaging in a hunger strike. As discussed, there is no such evidence, even

11

1   when drawing all inferences in plaintiff's favor.  Therefore, reconsideration of the decision
2   denying his motion to compel is not warranted.

3           4.        <u>Reclassification and Housing Decisions in 2015 and 2016</u>

4           Plaintiff claims that defendants Ducart, Fallis, Russell, Harrington, Robertson, and Ruff
5   violated his right to due process and retaliated against him for exercising his First Amendment
6   rights because they were involved in the decision, in 2015, to reclassify him and, in 2016, to move
7   him out of the SHU to general population.  In September and October 2105, Ducart held the
8   classification hearing, which Fallis and Ruff participated in, recommending plaintiff's move out of
9   the SHU.  In January 2016, pursuant to that recommendation and settlement of plaintiff's class-
10  action, defendants Harrington, Robertson, and Ruff reviewed plaintiff's housing and decided to
11  release him to the general population.  He was transferred to general population at Kern Valley in
12  February 2016.

13          Although due process protections can be triggered when a prisoner is put into segregated
14  housing, there is no authority that due process is also triggered when, as happened to plaintiff at
15  the end of 2015 and beginning of 2106, a prisoner is moved out of segregation into *less* restrictive
16  housing.  Decisions of prison officials regarding classification and housing do not generally
17  implicate the Due Process Clause or any liberty interest protected by due process.  *See*, *e.g.*,
18  *Hernandez v. Johnston*, 833 F.2d 1316, 1318 (9th Cir. 1987).  In any event, plaintiff all the
19  process that required for an inmate going *into* segregated housing, i.e. advance written notice of
20  the hearings and a written explanation for the decisions.  As there is no authority that the 2015 and
21  2016 classification and housing decisions implicated his right to due process, defendants are
22  entitled to summary judgment on his due process claim.

23          Plaintiff's retaliation claim based upon the 2015 and 2016 classification and housing
24  decisions also fails because there was no "adverse action."  The adverse action in the first element
25  of a retaliation claim need must cause harm that "would chill a person of ordinary firmness from
26  complaining" in the future.  *Shepard v. Quillen*, 840 F.3d 686, 691 (9th Cir. 2016).  The record
27  does not include any evidence that plaintiff's housing became worse as a result of the decisions in
28  2015 and 2016 to move him out of the SHU and into to the general population.  To the contrary,

12

being in the general population afforded him many privileges he did not have in the SHU. Indeed, leaving the SHU was a principal form relief plaintiff sought in his class-action and in his hunger strikes. No reasonable fact finder could conclude that receiving the relief sought in a lawsuit and a hunger strike would chill an ordinary person from filing suit or engaging in hunger strikes again. Accordingly, defendants are entitled to summary judgment on this retaliation claim.

5.  Retaliation by Defendant Black

Plaintiff claims that Black retaliated against him for complaining about the noise she made during a welfare check under the Guard One system. There is insufficient evidence of adverse action by Black, however, to create a triable issue. Plaintiff alleges that she made more noise the next time she did a welfare check, and then he yelled and cursed at her, she referred him to a mental health counselor for evaluation. Plaintiff does not dispute that these actions were too minimal to "chill a person of ordinary firmness from continuing to complain." *Ibid.* Acting more loudly on one occasion would not chill an ordinary person from complaining further, and indeed it did not stop plaintiff from continuing to complain about Black's actions, file an administrative grievance, or file this lawsuit challenging the entire Guard One program. Black's referral to a mental health counselor was also inconsequential insofar as plaintiff never had to undergo an evaluation and there is no other evidence of any adverse consequences of the referral. Defendants are entitled to summary judgment on this claim because of the undisputed absence of evidence of adverse action by Black that would support a claim of unconstitutional retaliation. In light of this conclusion, defendants' alternate argument that this claim is not exhausted need not be reached.[2]

//
//

---

[2] There is also no need to address defendants' argument that there are no allegations or evidence that defendants Beard or Kernan had any personal involvement in the claimed violation of plaintiff's right because defendants are entitled to summary judgment on the alternative grounds discussed above.

**CONCLUSION**

For the foregoing reasons, defendants' motion for summary judgment is **GRANTED**. The clerk shall enter judgment and close the file.

**IT IS SO ORDERED.**

Dated: June 28, 2022



WILLIAM ALSUP
United States District Judge

14